UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CHANDRAWATTIE HARRIPRASHAD,

                      Plaintiff,

-against-

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY d/b/a
METLIFE AUTO & HOME, ACE AMERICAN
INSURANCE COMPANY,

                      Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

1:09-CV-3105 (ENV)(VMS)

VITALIANO, D.J.

Plaintiff Chandrawattie Harriprashad seeks coverage under an insurance policy issued by defendant Metropolitan Property and Casualty Insurance Company ("Metropolitan") for claims of loss related to a fire that severely damaged her home on May 20, 2007.[1] In addition, Harriprashad has claimed special damages arising from Metropolitan's alleged breach of the insurance contract.[2] Metropolitan now moves for summary judgment on

---

[1] A second defendant, Ace American Insurance Company, was dismissed by stipulation, which the Court so ordered on January 14, 2010.

[2] On June 23, 2011, Harriprashad moved for leave to file an amended complaint, seeking to include special damages in her demand for relief and to add claims for bad faith and anticipatory breach and to request punitive damages and attorney's fees. (Docket No. 28.) On December 19, 2011, the Court adopted Magistrate Judge Andrew L. Carter's Report and Recommendation to grant in part and deny in part plaintiff's motion. As a result, Harriprashad was permitted to plead special damages. *Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, 09-CV-3105 ENV ALC, 2011 WL 6337699 (E.D.N.Y. Nov. 17, 2011) *report and recommendation adopted*, 09-CV-03105 ENV JMA, 2011 WL 6370039 (E.D.N.Y. Dec. 19, 2011). Plaintiff filed her amended complaint on December 21, 2011. (Docket No. 40.)

1

Harriprashad's breach of contract claim on the theory that plaintiff vitiated coverage by violating the concealment or fraud provision of her policy. That defense rests on the allegation that plaintiff submitted forged documents and made false statements in connection with her claims. Alternatively, Metropolitan also moves for summary judgment on plaintiff's claim for special damages. For the reasons set forth below, Metropolitan's motion is denied in its entirety.

## Background[3]

Harriprashad owns a home located at 170-32 93rd Street in Jamaica, New York. On May 20, 2007, a fire caused extensive damage to the structure as well as to certain personal property it contained. The building and Harriprashad's possessions were covered by a homeowners insurance policy issued by Metropolitan. Harriprashad submitted, on August 23, 2007, the subject claim, including a sworn statement of proof of loss ("proof of loss"). Obvious by this lawsuit, Metropolitan denied coverage.

As Metropolitan explains in its moving papers, denial of coverage, in large part, is grounded in its claim that Harriprashad first appended to her proof of loss false documentation of certain losses and expenditures and then, second, lied

---

[3] Ordinarily, Local Rule 56.1 Statements are an important part of the record to be considered by the Court when determining a summary judgment motion. Although Harriprashad's Rule 56.1 Statement does not conform strictly to the local rule, the statement, in conjunction with the appended supporting documents and accompanying briefing, enables the Court to identify and evaluate the relevant facts. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (recognizing Court's broad discretion to overlook deficiencies in the Rule 56.1 statements).

about their authenticity during an examination under oath ("EUO").[4] The first set of alleged misstatements and fraudulent documents concern four rent receipts, totaling $6000, that Harriprashad submitted with her claim. She testified at the EUO that the receipts were signed and provided to her by Mohammed Haniff, who owned the private home in which she rented a second floor apartment in the four month period June 2007 to September 2007. Her daughter, Angela Lachana, and a friend, Parbati Wong, corroborated her testimony at their depositions. Both described visiting Harriprashad at an apartment that matched the one in Haniff's home.[5]

While presumably not denying the ferocity of the fire that ravaged plaintiff's home and forced her to seek shelter elsewhere, Metropolitan attacks the authenticity of the receipts and asserts that Harriprashad lied during the EUO. In its attack, Metropolitan relies on the deposition testimony of Mohammed M. Haniff ("Haniff"), the current owner of the home where Harriprashad claims to have temporarily rented the apartment. In 2007, Haniff lived at the premises, which were then owned by his father, of the same name. He denied under oath that he or any other member of his family signed the receipts submitted by plaintiff and that Harriprashad ever lived in the apartment. Further, he said that, on one occasion, at Harriprashad's urging, his mother directed him to provide a rent receipt for $800.

---

[4] Harriprashad notes in her moving papers that Metropolitan requested that she adopt the transcript from the EUO, at which she did not have counsel, but she has refused.

[5] Although Lachana and Wong could not recall the address where they claimed to have visited Harriprashad during the relevant time period, they named the street and accurately described its location relative to Harriprashad's damaged home.

3

He complied, but did not recognize the receipt he created among those submitted by Harriprashad. Nonetheless, he acknowledged that, as a general matter, his parents maintained a rental unit on the second floor of their home and that he was not involved in renting the apartment before he took ownership of the premises.

The documents Harriprashad submitted to prove the value of several pieces of personal property are the next target for Metropolitan's authenticity attack. The attack also challenges the veracity of statements she made about these documents. Such information is material, Metropolitan contends, because Harriprashad's policy provides for reimbursement for lost or damaged items on an "Actual Cash Value basis," which the insurance contract defines as "the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." (Furlong Aff., Ex.1 at A-1, G-2-3.) To collect her settlement, Harriprashad had to "[p]repare an inventory of damaged or stolen personal property." (Furlong Aff., Ex. 1 at H-1.) In addition, she was required to "[a]ttach to the inventory all bills and other documents that substantiate the figures in the inventory." (Furlong Aff., Ex. 1 at H-1.)

As required by the contract, Harriprashad initiated her personal property claim by filing a proof of loss that included an inventory of the personal property destroyed in the fire. (Ajah Aff., Ex. E.) The inventory listed four items: a Sony television valued at $2689, a DVD/VCR valued at $550, a flex fan valued at $81.28, and a portable air conditioner valued at $650. (Ajah Aff., Ex. E.) In

4

addition, Harriprashad provided two consecutively-numbered documents, allegedly from G&R Electronics ("G&R documents"), which listed six items by name and serial number: a Sony television valued at $2698, a DVD/VCR valued at $250, a flex fan value at $81.28, a portable Amana air conditioner valued at $649.17, a home theater valued at $646.17, and a Sony camera valued at $349.[6] The first was dated June 19, 2007 and the second, June 30, 2007.

The parties dispute both the nature and authenticity of the G&R documents. The insurer protests that the documents—which bear a "paid" stamp—are receipts that Harriprashad forged. It substantiates its charge with the deposition testimony of Manny Gutflais, the owner of G&R Electronics, who stated that the documents did not bear the marks of receipts issued by his store. In addition, Metropolitan proffered a sworn statement of its investigator, William Furlong, who averred that he did not see the items listed on the G&R documents when he visited Harriprashad's residence. Rather, he found a DVD/VCR, home theater system, and television with model numbers that differed slightly from those listed, as well as a desk top fan (as opposed to a flex fan).[7] Photographs of these items were shown to Gutflais, who testified that his store did not carry these precise models in June 2007, and, therefore, that they could not have been sold, nor receipts issued for them.

---

[6] All values include tax, which was broken out for all items except for the DVD/VCR and Sony camera in Harriprashad's submissions.

[7] Further, he stated that, when questioned about the absence of the air conditioner, Harriprashad informed him that she had given it to charity.

Given that this decision denies Metropolitan's motion for summary judgment, it should come as no surprise that, as with the rent receipts, Harriprashad offered a very different explanation for the electronic equipment receipts. Although she testified at her EUO that the documents included items that she both chose and purchased on June 19 and June 30, 2007, she stated at other points during the course of the three-part interrogation that she might have selected the items on one trip to the store and purchased them on another. She unequivocally denied forging either document. Lachana corroborated her mother's testimony, stating that she accompanied plaintiff at G&R Electronics on at least two occasions to select replacement electronics before any purchases were made. Lachana stated that her mother received written estimates from a store employee during these trips and that the estimates looked the same as the G&R documents shown to her during her deposition. Further, Lachana confirmed that the documents at issue included the specific types of items that Harriprashad went to G&R Electronics to select.

Hewing to its version of the facts, Metropolitan determined that Harriprashad breached her insurance contract by submitting a false claim, and denied coverage. As a result of that denial, Harriprashad alleges that she has incurred significant additional costs, including multiple municipal fines and lawsuits as well as the cost of the demolition of her unrepaired home that became unavoidable.

Harriprashad initiated this breach of contract action to compel

payment of her insurance benefits. The special damages she seeks are to cover the additional expenses incurred as a result of Metropolitan's bad faith denial of coverage.

## Standard of Review

Under the Federal Rules of Civil Procedure, a court must grant summary judgment upon finding, based on the pleadings, depositions, interrogatory answers, admissions, and affidavits that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Feingold v. New York,* 366 F.3d 138, 148 (2d Cir. 2004). In determining whether the moving party has met this burden, a court must construe all evidence in a light most favorable to the nonmoving party, resolving all ambiguities and inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Gibbs–Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir. 2002). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original); *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 90 (2d Cir. 2002). Material facts are those, which given the substantive law, might affect the suit's outcome. *Anderson,* 477 U.S. at 248.

If the moving party makes a *prima facie* showing that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and put forth "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *Davis v. New York,* 316 F.3d 93, 100 (2d Cir. 2002). In so doing, the nonmoving party may not rely on conclusory allegations or speculation. *Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir. 2004) (citing *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998)); Fed.R.Civ.P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."). Thus, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita,* 475 U.S. at 586). Nonetheless, the nonmoving party need not make a compelling showing; it need merely show that reasonable minds could differ as to the import of the proffered evidence. *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997).

## Discussion

The concealment or fraud provision in the insurance policy issued by Metropolitan denies coverage "if any person has, relating to this insurance, intentionally concealed or misrepresented any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss." Metropolitan contends that this provision was violated by

documents Harriprashad submitted in support of her claims for living expenses and destroyed property, coupled with her statements under oath about them.

"In New York, to void an insurance contract on the basis of fraud, an insurer must show the insured willfully made a false and material statement under oath with the intent to defraud the insurer." *Staten Island Supply Co., Inc. v. Lumbermens Mut. Cas. Co.*, CIV.A.02-CV-6390 (DG, 2005 WL 711678 (E.D.N.Y. Mar. 29, 2005); *see also Fine v. Bellefonte Underwriters Ins.*, 758 F.2d 50, 52 (2d Cir.1985; *Deitsch Textiles, Inc. v. N.Y. Prop.*, 62 N.Y.2d 999, 1001, 479 N.Y.S.2d 487, 488, 468 N.E.2d 669 (1984). Effectively a written misrepresentation following a claimed loss, a fraudulent "proof of loss" can undercut recovery of insurance proceeds, so long as the misrepresentation meets the materiality and willfulness standards. *Saks & Co. v. Continental Ins. Co.*, 23 N.Y.2d 161 (N.Y. 1968). Fraud must, nonetheless, be proven by clear and convincing evidence to ensure that unintentional false statements do not form the basis for vitiating coverage. *Eurospark Indus., Inc. v. Underwriters at Lloyds Subscribing to Risk on Cover No. 97FA00071010A*, 567 F. Supp. 2d 345, 352-533 (E.D.N.Y. 2008).

The first prong of Metropolitan's defense—that Harriprashad voided her coverage by submitting and then lying about false rent receipts—fails, because there is a genuine question as to whether the receipts were, in fact, fraudulent. Metropolitan builds their argument upon Haniff's testimony that Harriprashad never lived in his parents' home and that neither he nor any of his family members signed or provided the receipts that plaintiff submitted. However, Harriprashad

undermines the probative weight of Haniff's statement by averring that Haniff's father, also named Mohammed Haniff, who was the owner at the time she rented, signed and provided the submitted receipts. Further, plaintiff offers testimonial evidence calling into question Haniff's central assertion that plaintiff never lived in his home. She says, of course, that she did live there and additionally offers the testimony of others to show she was temporarily housed in an apartment like the one in which she claims to have been housed. As such, it is clear that, even without the solicitous standard under New York insurance law applicable when the denial of insurance coverage is hinged to an alleged false statement by the insured, Metropolitan's defense as to the falsified rent receipts turns on the credibility of theses witnesses. Indeed, it is worse—while defendant supplies Haniff's testimony, it does not provide sworn statements from his parents, who, plaintiff claims, actually produced the receipts.

In federal court, credibility is, in almost all cases, for a jury as fact-trier to determine. Metropolitan seeks refuge in its reply in a line of New York state cases recognizing instances where credibility may be determined as a matter of law. Putting aside whether that observation has any significance, even in those cases in which New York courts have granted summary judgment based upon false statements made by an insured, the insurer has marshaled conclusive evidence as to the falsity of the statements at issue. *See Sextone v. Amato*, 8 A.D.3d 1116 (4th Dep't 2004) (rejecting plaintiff's testimony as implausible on its face); *Curanovic v. New York Central Mut. Fire Ins. Co.*, 307 A.D.2d 435 (3d Dep't 2003) (rejecting plaintiff's

statements that were contradicted by his own witness); *Carlin v. Crum & Forster Insurance Co.*, 191 A.D.2d 373 (1st Dep't 1993) (rejecting claims that were contradicted by documentary evidence); *Rickert v. Travelers Ins. Co.*, 159 A.D.2d 758 (3d Dep't 1990) (same as *Sextone v. Amato*, 8 A.D.3d at 1116).

The rent receipts, and statements about them proffered by Harriprashad, do not fit that bill. No documentary evidence disproves Harriprashad's testimony, nor is her explanation so far-fetched that it must be rejected on its face. Moreover, not only do two witnesses corroborate Harriprashad's essential testimony that, following the fire, she lived in an apartment that matched the description of the one in Haniff's home, Harriprashad also raises meaningful questions as to whether Haniff would have known about her transactions with his father. Drawing all reasonable inferences in Harriprashad's favor, as the Court must, Metropolitan's asserted evidentiary proof does not close what is an open fact question. In sum, there is a material question of fact regarding Metropolitan's defense. A fact finder, with the opportunity to judge the witnesses' credibility in person, must determine the authenticity of the rent receipts, and, by extension, the truth of Harriprashad's statements under oath.

The second prong of Metropolitan's defense—the alleged inauthenticity of the G&R documents and Harriprashad's associated false testimony—fails for lack of materiality.[8] It is well settled that "the materiality

---

[8] At this stage of the litigation, the Court need not, and does not, make a finding as to the authenticity of the G&R documents or the accuracy of Harriprashad's testimony about them.

11

requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Insur. Co.*, 725 F.2d 179, 183 (2d Cir. 1984). Critically, the insurer's investigation must relate to "a plausible theory reasonably derived from the available facts, one which would result in the voiding of its coverage." *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 184 (2d Cir. 1984). Metropolitan's investigation into whether Harriprashad actually purchased the items listed on the G&R documents and whether the documents themselves were authentic receipts for such purchases, does not so relate.

Defendant loses focus of the plain language of the insurance contract, which limits Harriprashad's coverage to Actual Cash Value Settlement.[9] (Furlong Aff., Ex.1, A-1; G-3.) As a consequence of that description of her coverage, Harriprashad has a right to cash value recovery regardless of whether she ever actually replaces the items lost in the fire. (Furlong Aff., Ex. 1 at G-3.) Therefore, plaintiff had no duty to prove that she in fact purchased or replaced post-fire the items listed in the inventory she submitted to Metropolitan. Nor does she *a fortiori* have the responsibility to submit receipts proving as much. An investigation into

---

[9] The property loss section of Harriprashad's contract references a second, supplemental mode of settlement called Replacement Cost Settlement. Replacement Cost Settlement, where available, compensates an insured for the difference between the cost of replacing lost items and the amount allowable on an Actual Cash Value basis, and is payable only if the insured has replaced the lost items. (Furlong Aff., Ex. 1 at G-3.) Significantly, the contract prohibits Replacement Cost Settlement if "Replacement Cost on Contents is [not] shown in the Declarations." (Furlong Aff., Ex. 1 at G-3.) The term does not appear in the Declarations section of Harriprashad's contract, and she, therefore, was only eligible for Actual Cash Value Settlement. (Furlong Aff., Ex. 1 at A-1-2; *see also* Furlong Aff., Ex.1 at cover sheet.)

what replacement purchases plaintiff may or may not have made after the fire is nothing more than a sideshow.

Dispositively, Metropolitan has little to say about the main event either. The principal issue presented in such a claim is whether the claimant meets the contractual obligation of supporting her proof of loss with "all bills and other documents that substantiate the figures in the inventory." (Furlong Aff., Ex. 1 at H-1.) Metropolitan has not directed the Court to anything in the record suggesting that the G&R documents misled the insurer as to whether Harriprashad in reality owned items similar to the ones reflected on the inventory or misrepresented their value. More importantly, Metropolitan has failed to allege, let alone proffer evidence, even if the G&R documents are precisely what Metropolitan alleges them to be—that is, lists of items and prices that Harriprashad wrote on slips of paper she took from G&R Electronics—that such proof of loss filing would not, under the policy, sufficiently and properly evidence the value of any similar personal property Harriprashad actually lost in the fire. While Metropolitan may ultimately reject the documents as sufficient proxies for proving the actual value of the lost items at the time of their loss, insufficient proof is a wholly different matter than fraud. Whether Harriprashad in fact actually purchased after her loss the specific items listed in the documents has no bearing on the question of their evidentiary truthfulness concerning the value of the covered loss. Any falsehood Harriprashad may have uttered about replacing lost items, in other words, is immaterial to

Metropolitan's coverage investigation and cannot constitute fraud.[10]

## Conclusion

For the foregoing reasons, summary judgment is denied. The parties are directed to contact Magistrate Judge Vera M. Scanlon to arrange for the scheduling of a pretrial conference, the resolution of any other pretrial matters, and the entry of a final joint pretrial order.

**SO ORDERED.**

Dated:   Brooklyn, New York
       June 7, 2013

                                              s/ ENV

                                              **ERIC N. VITALIANO**
                                              **United States District Judge**

---

[10] Metropolitan also moves against Harriprashad's claim for special damages. Since the underlying claims cannot be resolved on summary judgment, the Court finds that the motion directed at special damages is not ripe for adjudication.